IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| SANCHEZ BLAISE, *individually and on behalf of all others similarly situated*,<br>    Plaintiffs,<br><br>    v.<br><br>THE RECEIVABLE MANAGEMENT SERVICES LLC, *et al.,*<br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 4:21cv002 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion to Dismiss (ECF No. 5). Defendant seeks an order dismissing Plaintiff's complaint for lack of jurisdiction and failure to state a claim pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Motion to Dismiss will be granted without prejudice.

**I. BACKGROUND**

This is a purported class action filed pursuant to the Fair Debt Collection Practices Act ("FDCPA" or "Act") and Rule 23 of the Federal Rules of Civil Procedure. Plaintiff Sanchez Blaise ("Blaise" or "Plaintiff") filed a complaint against Defendant The Receivable Management Services, LLC ("Defendant" or "RMS") and twenty-five "John Doe" Defendants[1] on January 4, 2021. (Compl.,

---

[1] Plaintiff has not specifically identified these Defendants but explains that these are "individuals and businesses alleged for the purpose of substituting names of Defendants whose identities will be disclosed in discovery and should be made parties to this action." (Compl., ECF No. 1 ¶ 10.)

ECF No. 1.)  Blaise brings three claims against RMS under the FDCPA: violations of 15 U.S.C. §§ 1692e (Count One), 1692f (Count Two), and 1692g (Count Three).  (*Id.* ¶¶ 41-55.)[2]

Blaise incurred a purported obligation to Progressive Garden State Insurance Company ("Progressive") based on one or more consumer transactions, and Progressive contracted with Defendant to collect on the debt.  (*Id.* ¶¶ 21-25.)  On January 18, 2020, Defendant sent a collection letter ("Letter") to Plaintiff, attached as Exhibit A to the complaint.  (*Id.* ¶ 27; Compl. Ex. A, ECF No. 1-2.)[3]  Plaintiff concedes that "[T]he letter contains the requisite 'G-Notice'" required by 15 U.S.C. § 1692g.  (Compl. ¶¶ 28-29.)  However, Plaintiff alleges that two sentences at the end of the Letter overshadow the G-Notice because they are allegedly false, deceptive, and misleading, thereby violating the FDCPA.  (*Id.* ¶¶ 29-34.)  These sentences read:

> A negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligation. We will not submit a negative credit report until after 45 days have passed from the date of this letter and will not submit such a report if we receive notice that you dispute the obligation.

(*Id.* ¶ 30; Compl. Ex. A.)  Plaintiff asserts that this text creates the implication that if Plaintiff simply disputed the debt, Defendant would never file a negative report to a credit reporting agency.  (Compl. ¶¶ 30-36.)  Plaintiff asserts that "Defendant will not hold off submitting a negative credit report forever simply because a dispute has been made." (*Id.* ¶ 33.)

Plaintiff alleges that these two sentences overshadowed the notice required by the FDCPA, and "subjected Plaintiff to an informational injury as he was not able to fully ascertain his statutory rights."  (*Id.* ¶ 39.)  He claims that he was in "imminent risk of harm in that he was provided with false information about the alleged debt which prevented him from making reasonable decisions

---

[2] Plaintiff asserts, and Defendant does not appear to contest, that Defendant is a debt collector subject to the Fair Debt Collection Practices Act.  (Compl. ¶¶ 8-9.)
[3] The Court can consider Exhibit A for purposes of this Motion to Dismiss because it is integral to Plaintiff's claim and was incorporated into the complaint by reference.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)).

2

about whether to pay the debt." (*Id.* ¶ 35.) Plaintiff claims he was "damaged" by the foregoing. (*Id.* ¶ 40.) Plaintiff makes no further allegations about the Letter's impact. In particular, he does not allege that he suffered any concrete physical or economic harm as a result of the Letter, nor does he allege whether he submitted a dispute of the obligation or whether the language in the Letter impacted his conduct with regard to the obligation.

Plaintiff brings this action as a purported class action under Rule 23, and he seeks certification of the following class:

> a. all individuals with addresses in the State of Virginia;
> b. to whom Defendant RMS sent an initial collection letter attempting to collect a consumer debt;
> c. which letter stated that if Defendant RMS receives notice of a dispute, they will not submit any negative credit reporting;
> d. which letter was sent on or after a date one (1) year prior to the filing of this action and on or before a date twenty-one (21) days after the filing of this action.

(*Id.* ¶ 12.) Plaintiff seeks actual and statutory damages, as well as costs, attorneys' fees, and pre- and post-judgment interest on behalf of himself and the purported class. (*Id.* ¶11.) Plaintiff demands a trial by jury. (*Id.* ¶ 56.)

On February 3, 2021, Defendant filed a Motion to Dismiss that seeks to dismiss the complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 5.) Defendant asserts that Plaintiff has not sufficiently alleged Article III standing to give the Court jurisdiction over the case, and that Plaintiff's FDCPA claims fail as a matter of law. (*Id.*) Plaintiff filed a response in opposition to Defendant's Motion to Dismiss on February 17, 2021. (Mem. Opp'n, ECF No. 10.) Defendant filed a Reply on February 23, 2021. (Reply, ECF No. 11.)

## II. MOTION TO DISMISS

Defendant seeks dismissal of Plaintiff's complaint in its entirety pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. (ECF No. 5.) Defendant's Motion raises two separate rationales. First, Defendant argues that Plaintiff failed to allege an "injury in fact" sufficient to give

3

the Court jurisdiction over the case under Article III of the Constitution. (Mem. Supp., at 2, 4-6, ECF No. 6.) Defendant alternatively argues that even if Plaintiff has standing, Defendant did not violate the FDCPA because the Letter fully complied with the Act. (*Id.* at 12-16.) Defendant argues that the Letter contained the requisite notices pursuant to 1692g, that the subsequent language did not overshadow this notice, and that the language in the Letter could not plausibly be construed to be deceptive. (*Id.*) Defendant also argues that Count Two, violation of 15 U.S.C. § 1692f, fails as a matter of law because it is not based on circumstances independent from those alleged in Count One. (*Id.* at 15-16.) Plaintiff opposes the motion. (Mem. Opp'n, ECF No. 10.)

### III. LEGAL STANDARDS

#### A. Motion to Dismiss Standard Under Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows for dismissal of a claim for "lack of subject-matter jurisdiction . . . ." When a defendant contends that a complaint fails to allege facts sufficient to support subject matter jurisdiction—a facial challenge—"the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Namely, this includes that the facts alleged are taken as true and, presumably, must plausibly allege facts sufficient to invoke subject matter jurisdiction. *See id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As the Supreme Court explained, "[t]he party invoking federal jurisdiction bears the burden of establishing [each element of jurisdiction] . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561(1992) (citations omitted).

#### B. Motion to Dismiss Standard Under Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." "A motion to dismiss under Rule

4

12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their *res judicata* effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). The Federal Rules of Civil Procedure only require that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

**C. Article III Standing**

Standing to sue under Article III of the Constitution is necessary to maintain an action in federal court, because the jurisdiction of federal courts is constitutionally limited to deciding "cases" and "controversies." *Lujan*, 504 U.S. at 559-60 (citations omitted). In order to establish Article III standing, a plaintiff must establish: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of [that is] fairly . . . traceable to the challenged action . . . ," and (3) that it is "likely" and not "merely speculative" that the injury is redressable by a favorable decision. *Id.* at 560-61 (citations and internal quotation marks omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

Often at issue when determining standing is whether the purported injury is sufficiently "concrete." In *Spokeo Inc. v. Robins*, 136 S. Ct. 1540 (2016), the Supreme Court remanded a Fair Credit Reporting Act ("FCRA") claim for further consideration of whether the injury in fact standing requirement was met, and in doing so, the Court elaborated on what is required to demonstrate a concrete injury in fact for standing purposes. In explaining the inquiry into whether an intangible harm can constitute an injury in fact, the Court explained that "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo*, 136 S. Ct. at 1549. First, the Court explained that "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* (citation omitted). It further explained that, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Id.*

However, Congress does not have unlimited power to legislate "injuries in fact" that satisfy the Article III standing requirement. The *Spokeo* Court explained that, "Congress' role in identifying

6

and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Thus, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (citations omitted). Yet, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id.*

The United States Supreme Court expanded on *Spokeo* and the concreteness requirement in a case decided earlier this year, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). In that case, which was also brought under the FCRA, the Court held that class action plaintiffs, whose names were inaccurately recorded by credit reporting agencies as being on a Department of Treasury watch list but whose information was never disseminated, did not have standing because they did not suffer any concrete harm stemming from the violation. *Ramirez*, 141 S. Ct. at 2200. Additionally, the Court held that the class plaintiffs had not established a concrete injury stemming from formatting errors in letters they received from the credit reporting agencies. *Id.* The Court reiterated the inquiry from *Spokeo*: injury in fact requires a "concrete harm," which can stem from a tangible harm or certain intangible harms. *Id.* (citing *Spokeo*, 136 S. Ct. at 1540).

The Court again explained that the first inquiry into whether an intangible harm is sufficiently concrete is "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* at 2204. If there is no such analogue, courts should then turn to Congress, and "must afford due respect to Congress's decision to imposes a statutory prohibition or obligation . . . and to grant plaintiff a cause of action . . . ." *Id.* (citing *Spokeo*, 136 S. Ct. at 1540). However, Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* at 2205 (citations omitted). The Court then looked to the risk of future harm as a basis for a concrete intangible injury and concluded

7

that "plaintiffs did not factually establish a sufficient risk of future harm to support Article III standing." *Id.* at 2211-12.  Finally, in rejecting an argument that asserted informational injuries were sufficient, the Court explained that the case did not involve a public-disclosure law that would elevate the injury nor had the plaintiffs identified "downstream consequences from failing to receive the require information." *Id.* at 2214 (internal citation and quotation marks omitted).  Ultimately, the Court explained, "[a]n asserted informational injury that causes no adverse effects cannot satisfy Article III." *Id.* (internal citation and quotation marks omitted).

Thus, the *Ramirez* Court expanded on *Spokeo* in explaining that the jurisdictional requirement of a concrete injury in fact cannot be ignored.  The Court emphasized that "[f]ederal courts do not possess a roving commission to publicly opine on every legal question." *Id.* at 2203.  Rather, "a federal court may resolve only 'a real controversy with real impact on real persons.'" *Id.* (quoting *Am. Legion v. Am. Humanist Assn.*, 139 S. Ct. 2067, 2103 (2019)).  And in *Ramirez*, although Congress had enacted a statutory remedy, there was no standing where the plaintiffs were unable to establish a common law analogue or "a sufficient risk of future harm" in their specific circumstances. *See id.* at 2211-12.

Pre-*Ramirez* decisions within the Fourth Circuit applied a similar analytical framework to the question of which intangible injuries are "concrete," though courts varied on the amount of deference given to Congress.  In *Dreher v. Experian Information Solutions, Inc.*, the Fourth Circuit analyzed a purported informational injury and held that "a constitutionally cognizable informational injury requires that a person lack access to information to which he is legally entitled *and* that the denial of that information creates a 'real' harm with an adverse effect." 856 F.3d 337, 345 (4th Cir. 2017) (citations omitted).  In that case, the court held that the plaintiff had not put forward a common law analogue, nor was his supposed injury tied to "the type of harm *Congress sought to prevent* by requiring disclosure." *Id.* at 345-46 (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C.

8

Cir. 2016)). Courts in the Eastern District of Virginia have differed on how to evaluate whether the purported injury and Congressional intent combine to establish a concrete inquiry in fact. Some courts focus primarily on the injury as pled in the complaint and assess whether that injury creates a material risk of harm. *See, e.g.*, *Brown v. Glasser & Glasser, P.L.C.*, No. 3:17cv703, 2017 WL 5195869, at *3-*5 (E.D. Va. Nov. 9, 2017); *Fulp v. Sykes, Bourdon, Ahern, & Levy, PC*, No. 3:20cv53, 2020 WL 4926176, at *2-*3 (E.D. Va. Aug. 21, 2020). Others are more deferential to Congress, and focus on the statutory requirement in the abstract and whether it is designed to protect a substantive right, and whether that right is put at "risk of real harm" by a violation of the procedural right. *See Brown v. R&B Corp. of Va.*, 267 F. Supp. 3d 691, 698, 700-02 (E.D. Va. 2017); *Yergovich v. Small Cmty. Specialists LLC*, 337 F. Supp. 3d 635, 642 (E.D. Va. 2018).

In a series of opinions that preceded *Ramirez*, the Seventh Circuit adopted a more stringent standard for standing based on intangible injuries in FDCPA cases. *See Larkin v. Fin. Sys. of Green Bay*, Inc., 982 F.3d 1060 (7th Cir. 2020). In that case, the court held that under a motion to dismiss standard, two FDCPA "dunning" letters did not give rise to a concrete injury in fact under § 1692e or § 1692f because the plaintiffs had not sufficiently alleged "that the statutory violation harmed him or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." *Larkin*, 982 F. 3d at 1066 (citing *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (quoting *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017)) (internal quotation marks omitted)). This reasoning is more akin to the reasoning in *Brown v. Glasser & Glasser, P.L.C.*, which focused on the specific risk of harm as alleged by the plaintiff and not an abstract review of the FDCPA. *Compare Larkin*, 982 F. 3d at 1066, *with Glasser & Glasser, P.L.C.*, 2017 WL 5195869, at *3-*5, *and R&B Corp. of Va.*, 267 F. Supp. 3d at 698, 700-02. Moreover, this reasoning is more in line with the Supreme Court's *Ramirez* decision, which looked to the particular factual context of the asserted injuries (there, whether or not the incorrect information was

disseminated to third parties) when determining whether an intangible, non-common law injury was sufficiently concrete.  *See* 141 S. Ct. at 2210-11.

### **D. Fair Debt Collection Practices Act**

The FDCPA is a statute the provides various rights and remedies to consumers in order to protect them "from abusive debt collection practices by debt collectors." *R&B Corp. of Va.*, 267 F. Supp. 3d at 698 (citing 15 U.S.C. § 1692(e); *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996)).  Section 1692e of the Act prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."  § 1692f.  Section 1692g provides a set of procedural requirements debt collectors must abide by when sending a consumer notice of a debt and upon receipt of information about disputed debts.  This includes the requirement that within five days of the initial communication with the consumer, the debt collector must send a written notice that contains:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

§ 1692g(a). Even if a notice contains these elements, it may still violate the provision if it is presented in a way that overshadows or contradicts these elements such that it makes the least sophisticated consumer uncertain about her rights.  *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996).

## IV. DISCUSSION

**A. Defendant's Position**

Defendant seeks to dismiss all counts on two separate bases: (1) Plaintiff's lack of Article III standing, and (2) Plaintiff's failure to state a claim for violation of the FDCPA.

### 1. Standing

With regarding to standing, the Defendant argues that the Plaintiff does not have standing to sue because she has only alleged a procedural or informational injury, but no actual harm. (Mem. Supp., at 2, ECF No. 6 (citing *Spokeo*, 136 S. Ct. at 1549; five recent opinions from the 7th Circuit (citations omitted)).) Defendant argues that Plaintiff's purported injury—receiving a letter that told him that if he filed a dispute, Defendant would not negatively report on him to credit reporting agencies—is at most a bare procedural violation insufficient to establish standing without some further harm that is "concrete" as required by Article III. (*Id.* at 4-6.) According to the Defendant, based on Supreme Court and Fourth Circuit precedents, this purported "informational injury" is insufficient without some other accompanying "real" harm. (*Id.* at 5-6 (citations omitted).)

RMS argues that Plaintiff has not alleged that the Letter withheld information to which he was statutorily entitled, nor has he alleged any additional concrete harm. (*Id.* at 6-11.) Defendant argues that the FDCPA does not contain a statutory entitlement to information about whether the debt collector will report a consumer debt to credit reporting agencies, but rather contains provisions about providing the information regarding the underlying debt. (*Id.* at 6-7.) Therefore, RMS argues, Plaintiff cannot have a sufficient "informational injury" because he does not have a statutory or common law right to this particular information. (*Id.*) And Defendant notes that Plaintiff makes no allegations about how he responded to or was damaged by the disputed sentences in the Letter, other than to say "he was at imminent risk of making an unreasonable decision regarding whether to pay the subject debt." (*Id.* at 7-8 (citing Compl. ¶ 35)).

Defendant cites opinions from Eastern District of Virginia and the District of Maryland for the proposition that a plaintiff pleading an intangible injury must establish a real risk of harm. (*Id.* at 8-9 (citations omitted).) Defendant then cites a series of recent opinions from the Seventh Circuit that hold that the victim of an informational injury must allege an actual harm connected to that injury to have standing, and that an intangible injury is insufficient. (*Id.* at 9-10.) Defendant argues that Plaintiff's purported "risk" of injury is speculative and insufficient. (*Id.* at 11.)

        2. FDCPA

Alternatively, Defendant argues that even if Plaintiff has standing, he has not sufficiently alleged that the Letter violates the FDCPA. (*Id.* at 12.) Defendant argues that from the standpoint of the least sophisticated consumer, evaluating the Letter as a whole, the last two sentences of the Letter plainly did not overshadow the § 1692g notices contained therein. (*Id.* at 12-13.) Defendant notes that Plaintiff has conceded that the Letter contained the necessary § 1692g language, and though § 1692g can be violated if the notice is overshadowed or contradicted, the disputed sentences do not involve the information required by § 1692g. (*Id.* at 13.) Therefore, nothing is contradicted or overshadowed because the disputed sentences address a different issue—credit reporting. (*Id.*)

Regarding Plaintiff's claim under § 1692e, Defendant argues that Plaintiff fails to sufficiently allege that the representation was "material" and fails to allege how the Letter constitutes an attempt to manipulate or mislead Plaintiff. (*Id.* at 14-15.) Finally, Defendant argues that Plaintiff fails to state a claim under § 1692f because case law indicates that a § 1692f claim cannot be predicated on the same underlying misconduct as the § 1692e claim, and Plaintiff does not allege any additional misconduct related to the § 1692f claim. (*Id.* at 15-16.)

**B. Plaintiff's Position**

Plaintiff opposes dismissal of his claims.

    1. Standing

On standing, Plaintiff argues that his injury stems from the violation of his right to be free from deceptive and harassing debt collection practices under §§ 1692e and 1692f of the Fair Debt Collection Practices Act.  (Mem. Opp'n, at 8-9, ECF No. 10.)[4]  Plaintiff cites three district court opinions from the Eastern and Western Districts of Virginia for the proposition that violations of §§ 1692e and 1692f alone are sufficient to establish a concrete injury for standing purposes.  (*Id.* at 8-10 (citing *Henderson v. Gen. Revenue Corp.*, No. 7:17CV00292, 2019 U.S. Dist. LEXIS 148403 (W.D. Va. Aug. 30, 2019); *Drew v. Valley Credit Serv.*, No. 3:17CV00083, 2018 U.S. Dist. LEXIS 42321 (W.D. Va. Mar. 14, 2018); *Yergovich v. Small Cmty. Specialists LLC*, 337 F. Supp. 3d 635 (E.D. Va. 2018)).)  Plaintiff also argues that even if his rights under the statute are merely procedural, he has also sustained a sufficient risk of harm because he "was at risk of being subject to abusive debt collection practices simply by being deceived into thinking that by disputing the debt, he would forever be free of credit reporting from the debt collector on this particular debt."  (*Id*. at 16-17.)

    2. FDCPA

On the FDCPA claims, Plaintiff asserts that the disputed language in the Letter "deceives the [least sophisticated consumer] into thinking that he has a 'get out of jail' card regarding further debt collection activities after a debt validation request has been made."  (*Id.* at 18.)  Plaintiff argues that this implication was false, and thus constitutes a "plausible violation" of 15 U.S.C. §§ 1692e, 1692f, and 1692g.  (*Id.* at 21-22.)  Finally, Plaintiff cites an opinion from the District of Maryland for the proposition that "in some circumstances," the same conduct can support violations of both §§ 1692e

---

[4] The Court uses the page numbering assigned by the CM/ECF system unless otherwise noted.

13

and 1692f.  (*Id.* at 22 n. 1 (citing *Cooke v. Carrington Mortg. Servs.*, No. TDC-18-0205, 2019 U.S. Dist. LEXIS 120248, at *17 (D. Md. July 17, 2019)).)

### C. Application

The Plaintiff has failed to plausibly plead a concrete injury in fact sufficient to establish standing, so accordingly, the Court will dismiss the complaint.  Because Plaintiff could theoretically plead facts sufficient to establish a concrete harm, the dismissal will be without prejudice.  The Court will not address Defendant's arguments regarding the FDCPA because the Court does not have jurisdiction to hear Plaintiff's claims.

Plaintiff's claim is premised on two sentences at the end of a notice letter that the Plaintiff concedes contains each of the elements required by § 1692g.  (Compl. ¶¶ 28-29.)  The disputed language says:

> A negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligation. We will not submit a negative credit report until after 45 days have passed from the date of this letter and will not submit such a report if we receive notice that you dispute the obligation.

(*Id.* ¶ 30; Compl. Ex. A.)  Plaintiff contends that the conclusion of this letter—"[we] will not submit such a report if we receive notice that you dispute the obligation"—contains an implicit representation that the Defendant will *never* submit a negative credit report, which Plaintiff asserts is not true. (Compl. ¶¶ 30-36.)  On a motion to dismiss, the Court will construe these allegations as true and in the light most favorable to the Plaintiff.  For purposes of considering standing, the Court will also assume that this sentence violates 15 U.S.C. §§ 1692e, 1692f, and 1692g.  The issue, however, is that even with these presumptions, Plaintiff has not met his burden to plead a concrete injury in fact that is not conjectural.

Plaintiff alleges only that he sustained an "informational injury as he was not able to fully ascertain his statutory rights."  (*Id.* ¶ 39.)  He alleges no facts about any tangible harms and does not

14

explain how the disputed language in the Letter impacted his conduct, if at all. Instead, he claims that he was in "imminent risk of harm in that he was provided with false information about the alleged debt which prevented him from making reasonable decisions about whether to pay the debt." (*Id.* ¶ 35.)

Plaintiff has not alleged a tangible harm, only an intangible informational injury. (*Id.* ¶ 39.) Under the Supreme Court's precedents in *Spokeo* and *Ramirez*, the Plaintiff has only a few avenues to sufficiently establish a concrete injury. Plaintiff must establish one of the following: (1) that the intangible harm has a close relationship to a traditional common law claim, (2) that Congress's grant of a procedural right, in conjunction with the facts, is sufficient to confer Article III standing, or, relatedly, (3) that the intangible injury creates a sufficient risk of future harm. *See Ramirez*, 141 S. Ct. at 2204, 2211-12, 2214; *Spokeo*, 136 S. Ct. at 1549.

First, the Court looks to whether there was an analogous claim at common law to redress the asserted intangible injury. In the context of the FDCPA, Judge Davis's opinion in *Brown v. R&B Corp. of Virginia* recounts the common law history of debt collection and persuasively concludes that there was no analogous common law right of action. 267 F. Supp. 3d at 699-700. Thus, Plaintiff must establish an alternative basis to demonstrate a concrete injury in fact. Reading *Spokeo* and *Ramirez* together, this suggests some level of deference to Congress's decision to grant a right of action, combined with whether the facts pled allege a harm or a sufficient risk of harm. *See Ramirez*, 141 S. Ct. at 2204, 2211-12, 2214; *Spokeo*, 136 S. Ct. at 1549.

With respect to informational injuries like the one alleged here, the *Ramirez* court was clear that "[a]n asserted informational injury that causes no adverse effects cannot satisfy Article III." 141 S. Ct. at 2214. As the Fourth Circuit in *Dreher* held, "a constitutionally cognizable informational injury requires that a person lack access to information to which he is legally entitled and that the denial of that information creates a 'real' harm with an adverse effect." 856 F.3d at 337, 345. The

15

fact that Congress established a cause of action, on its own, is not sufficient to establish Article III standing.

Here, Plaintiff fails to allege any resulting harm from the disputed sentences in the letter, other than an "informational injury as he was not able to fully ascertain his statutory rights." (Compl. ¶ 39.) He claims that he was prevented from making reasonable decisions about whether to pay, but again fails to establish how this intangible injury constitutes a plausible injury in fact. (*See id*. ¶ 35.) Even on a motion to dismiss, the Court is not bound to accept conclusory allegations that Plaintiff was damaged. Here, the Court finds it implausible, based on the facts pled, that the Plaintiff suffered a concrete injury from the Letter language that merely stated that RMS "will not submit [a negative credit] report if we receive notice that you dispute the obligation." (Compl. Ex. A.) Plaintiff does not allege that this impacted his behavior in any way, only that "he was not able to fully ascertain his statutory rights." (Compl. ¶ 39.) The consequences of this, however, are necessary to determine whether Plaintiff suffered an injury in fact.

From the facts pled, it is implausible that this statement would create a real and imminent risk of harm. Indeed, it appears from the face of the Letter that the most likely effect of this language would be the consumer submitting a dispute of the debt. It is unclear from the pleadings how this would plausibly be harmful, and indeed, it may well be beneficial. But in any event, Plaintiff's complaint is devoid of any factual allegations that this was the path that he took, or if it was not, that he was in any way damaged by reading this Letter. This purported procedural violation is unaccompanied by any actual harm or substantial risk thereof, and accordingly Plaintiff has failed to establish standing. The mere fact that Congress enacted causes of action under the FDCPA is insufficient on its own to establish judicial standing under Article III. As the Supreme Court explained,

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute

16

grants a person a statutory right and purports to authorize that person to sue to vindicate that right. . . .[A plaintiff cannot] allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Spokeo*, 136 S. Ct. at 1549.

As the Supreme Court recently stated in *Ramirez*, "Federal courts do not possess a roving commission to publicly opine on every legal question." 141 S. Ct. at 2203. The Plaintiff here invites the Court to read a Letter he (and presumably, others) received from a debt collector and opine that its text violates various provisions of the FDCPA. Other than conclusory statements, however, he does not plausibly allege that he was injured by the Letter. Without a concrete and particularized injury in fact, Plaintiff does not have Article III standing and the Court cannot hear his case. Accordingly, Defendant's Motion to Dismiss will be granted.

## V. CONCLUSION

For the reasons stated above, the Motion to Dismiss will be granted without prejudice.

An appropriate Order shall issue.

_____/s/_____
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: <u>August 24, 2021</u>